UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-62178-CIV-COHN/SELTZER

SHANE VOSS,

    Plaintiff,

v.

BAG OCEAN CLUB, LLC

    Defendant.

_____/

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Bag Ocean Club, LLC's ("Bag") Motion for Partial Summary Judgment ("Defendant's Motion") [DE 56] and Plaintiff Shane Voss's Motion for Summary Judgment ("Plaintiff's Motion," and, together with Defendant's Motion, the "Motions") [DE 61]. The Court has reviewed the Motions, all related filings, and the record in this case, and is fully advised in the premises. For the reasons stated below, both Motions will be denied.

## BACKGROUND

Bag owns a motor yacht called the Ocean Club (the "Vessel"). [DE 61 at 3.] In May 2016, Bag hired Plaintiff Voss to serve as the Vessel's first mate. [Id.] Voss was offered and accepted an annualized salary of $66,000, but he and Bag never executed a written employment contract. [DE 66 at 2-3.]

On May 28, 2016, the Vessel embarked upon a twenty-hour voyage from Fort Lauderdale, Florida to Fernandina Beach, Florida. [DE 68 at 6.] During that voyage, the Vessel encountered bad weather and experienced problems with its stabilizers. [Id. at 8-9.] During the storm, Voss attempted to check the Vessel's alarm panel. While

leaning to view the alarm panel, he fell into an open stairwell, sustaining an injury to his shoulder. [Id.] He remained working aboard the Vessel until September 13, 2016, when he went ashore to receive medical treatment. Voss never returned to the Vessel, but Bag continued paying his regular salary through January 31, 2017, which amounted to a per diem wage of $130.68. Beginning January 31, 2017, Bag ceased paying Plaintiff his wage but began making per diem maintenance payments of $124.00. The maintenance payments continued through August 31, 2017, when Plaintiff achieved maximum medical improvement ("MMI"). In Count II of his Complaint, Plaintiff asserts a claim for failure to pay maintenance and wages. [DE 1 ¶¶ 28-34.]

In Counts I and III, Plaintiff asserts claims for negligence and Unseaworthiness. [Id. ¶¶ 23-27, 35-38.]

## **LEGAL STANDARD**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Genuine disputes of fact exist when the evidence is such that a reasonable jury could render a verdict for the non-movant. Factual issues are considered genuine when they have a real basis in the record." Melton v. Abston, 841 F.3d 1207, 1219 (11th Cir. 2016).

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings," but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990).  In deciding a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## DISCUSSION

### I. MAINTENANCE AND WAGES

General maritime law governs here.  It directs that a vessel owner must provide an injured seaman with "maintenance and a cure."  See Flores v. Carnival Cruise Lines, 47 F.3d 1120, 1122 (11th Cir. 1995).  "A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship."  Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001).  "Maintenance" encompasses a basic living allowance, and "cure" encompasses the seaman's medical expenses.  Flores, 47 F.3d at 1122.  The vessel owner must also pay the seaman his regular wage through the end of the voyage on which he was

injured or the expiration of his employment contract, whichever occurs later.  Nichols v. Barwick, 792 F.2d 1520, 1524 (11th Cir. 1986).

      The Parties agree on the basic sequence of events and on the amounts of money Bag paid to Voss.  They disagree as to whether those amounts fully satisfied Bag's maintenance obligation.[1]  Voss claims that Bag breached that obligation by failing to make maintenance payments for the period between September 13, 2016 (when he left the Vessel to seek medical treatment ashore) and January 31, 2017 (when Bag ceased paying his regular salary and began instead paying maintenance) (the "Disputed Period").  [DE 61 at 12.]  Bag argues that it satisfied its maintenance obligation for the Disputed Period by paying Voss his full salary during that time.[2]  [DE 68 at 2-3.]  Bag acknowledges that, had Voss remained employed by Bag during the Disputed Period, it would have been required to pay maintenance in addition to salary.  Yet, it argues that Voss's at-will employment was terminated on September 13, 2016, lifting any obligation to continue paying his salary.  Therefore, the salary payments it did make served to satisfy the maintenance obligation.  [Id.]

      This dispute boils down to whether Bag was also obligated to pay Voss's salary during the Disputed Period.  If so, then it clearly failed to pay the required maintenance.  If not, then the "salary" payments it did make functioned to satisfy the maintenance obligation.  A vessel owner must pay an injured seaman's salary through either the end of the voyage on which he was injured, or the end of his employment contract, whichever occurs later.  Nichols, 792 F.2d at 1524.  The voyage on which Voss was

---

[1] The Parties agree that Bag satisfied its obligation to pay cure.

[2] His pro-rated salary equaled daily payments of $130.68, greater than the $124.00 per diem he received as maintenance beginning January 31, 2017.

injured lasted no more than two days in May 2016.  Thus, Voss would only be entitled to maintenance if he was subject to an employment agreement during the Disputed Period.

The Parties agree that they never executed a written employment contract.  But Voss claims that, at the time Bag hired him in May 2016, they entered into an oral agreement that his employment would last for a one-year term.  Under maritime law, oral contracts are considered valid and enforceable.  See Kossick v. United Fruit Co., 365 U.S. 731, 733-35 (1961).  As with any other contract, a maritime contract consists of the following elements: an offer, acceptance, and consideration.  See Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM, 2011 WL 13220299, at *32 (S.D. Fla. Jun. 21, 2011).  A plaintiff seeking to prove the existence of a maritime contract must demonstrate a "meeting of the minds" as to the essential terms of the contract.  Id.

In support of his position that the Parties agreed to a one-year term of employment, Voss cites his own deposition testimony that he was offered and accepted a salary of $66,000 per year.  [DE 74 at 2-3.]  He also cites the testimony of Mitch Schacter, the Vessel's captain.  Captain Schacter was asked the following question: "So, you understood that [Voss] would be hired for a period of one year?"  He answered: "Correct.  I mean, he's—we're all at will employees.  You guys know better than anybody it's a very transient industry . . . ."  [Id.]  In reply, Bag cites additional testimony in which Captain Schacter clearly states that all Bag employees were at-will, and that the $66,000 salary offered to Voss merely reflected annualized pay, not an offer of employment for a full year.  [DE 73 at 3-5.]  Bag also cites testimony from Voss in which he seems to acknowledge that he was an at-will employee.  [Id. at 5.]

Weighing the meager record presented, the Court concludes that neither Voss nor Bag has satisfactorily demonstrated that "there is no genuine dispute" as to whether the Parties entered into an oral employment agreement. Fed. R. Civ. P. 56(a). A reasonable jury could determine either that the Parties formed a contract, or that they did not. Accordingly, the Court will deny summary judgment on this issue.

## II.     NEGLIGENCE AND UNSEAWORTHINESS

Plaintiff's Motion argues the negligence and unseaworthiness claims in tandem, since the same factual conditions constitute both alleged infractions. [DE 61 at 12.] The Court will therefore address them together.

Plaintiff contends that the (1) Vessel's crew "did not meet the minimum crewing requirement imposed by the Vessel's Flag State, the United States of America," (2) the Vessel's crew did not receive training on the Vessel's critical systems, and (3) the location of the Vessel's "emergency alarm panel required crewmembers to stand over an open stairwell" to read it. [DE 61 at 2.] He argues that there is no genuine dispute of fact on these points, and that summary judgment is therefore warranted on his negligence and unseaworthiness claims. [Id. at 12-16.] Defendant responds that Plaintiff has not identified a legal "crewing requirement" that Defendant violated, and indeed the Vessel was not subject to such a requirement, and that an adequate degree of training for the crew and whether or not the placement of the alarm panel posed a hazard are both subject to reasonable dispute. [DE 68 at 15-18.]

The Jones Act provides a cause of action sounding in negligence for a seaman injured "in the course of employment." 46 U.S.C. § 30104. "In establishing a Jones Act claim based on negligence, the elements of duty, breach, and injury, draw on common

law principles; the element of causation is relaxed; and some common law defenses are modified or abolished." Thompson v. Oceania Cruises, Inc., 2015 WL 12562892, at *1 (S.D. Fla. Oct. 13, 2015) (internal brackets and quotation marks omitted). But the relaxed causation standard "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." Id.

A plaintiff alleging unseaworthiness must demonstrate that: (1) the Vessel was unseaworthy, and that (2) the unseaworthiness was a legal cause of his injury. Crow v. Cooper Marine & Timberlands Corp., 657 F. Supp. 2d 1248, 1251 (S.D. Ala. 2009). The unseaworthiness claim is not subject to a loosened causation standard. Causation in this context means "(1) that the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Thompson, 2015 WL 12562892, at *4. Unseaworthiness can encompass an array of conditions related to, *inter alia*, the physical condition of the vessel and its appurtenances and the conditions facing its crew. See Week Marine, Inc. v. Wright, 2015 WL 4389918, at *2 (S.D. Ala. Jul. 15, 2015). See also Churchwell v. Bluegrass Marine, Inc., 444 F.3d 898, 906 (6th Cir. 2006) ("A vessel may be unseaworthy because it contains defective gear, is missing necessary gear, or because its crew is instructed to use unsafe work methods.")

The Court will address Plaintiff's three factual arguments in turn. First, Plaintiff alleges that the Vessel "was not manned with the correct number of crew[,] and the crew onboard lacked the licenses and credentials required by the Flag State." [DE 61 at 14.] Plaintiff claims that the Vessel "was held to a heightened manning standard," which

is "statutory in nature." [Id.]  Under this purported standard, the Vessel was required to carry a licensed master, a licensed mate, and two licensed chief engineers.  [Id.]  But, apart from a stewardess and a chef, the Vessel's crew at the time of Plaintiff's accident included only two members: Captain Schacter and Plaintiff.  Plaintiff alleges that the insufficiency of the crew contributed to the accident, because with a more substantial crew Plaintiff would have been more rested and there would have been an engineer in the engine room to directly observe conditions and report them to other crew members, obviating the need for Plaintiff to check the alarm panel.  [Id. at 15.]

The sole support Plaintiff offers for his position on the crewing requirement is a redacted letter opinion from the U.S. Coast Guard ("Letter"), dated September 16, 2010. [DE 61-3.]  The Letter appears to resolve the appeal of a previous Coast Guard administrative decision regarding the manning requirement for an entirely different vessel (whose identity is redacted).  [Id.]  Plaintiff argues that because the Vessel, like the vessel described in the Letter, weighs more than 200 gross tons, the crewing requirement described in the Letter also applies to the Vessel.  Defendant argues that "the language in the [Letter] itself clearly indicates that the decision referenced therein is specific to the matter at hand.  Simply, there are no such 'statutory requirements' and the Plaintiff has failed to produce a single statutory authority to suggest these statutory requirements exist."  [DE 68 at 17.]

The Court finds the Letter insufficient to demonstrate the existence of a minimum crewing requirement governing the Vessel.  The Letter, by its terms, resolves an administrative matter pertaining to a separate vessel, with no discussion from Plaintiff as to how any similarities or differences between the subject vessel and the Vessel

8

might affect the Coast Guard's conclusion.  The Letter is also eight years old, with no indication from Plaintiff as to whether the requirements it describes have since been amended.  More pertinently, the Letter is apparently binding only as to the vessel it describes.  The Letter does cite various provisions from the Code of Federal Regulations which apparently support its conclusions, but Plaintiff's Motion does not itself cite any of those regulations or demonstrate if and how the relevant regulations apply to the facts at issue here.  Without more, the Court cannot conclude that there is no reasonable dispute of fact that Defendant violated the relevant crewing regulations.  Moreover, the Court finds that, even if Defendant did violate the regulations, there is a dispute of fact as to whether such violation legally caused Plaintiff's injury.

Plaintiff's second argument is that "[Bag's] failure to train the crew . . . was negligent and caused or contributed to Voss's injury . . . [and] also rendered the [Vessel] unseaworthy." [DE 61 at 15.]  His third and final argument is that "the location of the Vessel's alarm panel rendered the Vessel unseaworthy and [Bag's] failure to relocate the alarm panel was negligent." [DE 61 at 16.]  The Court finds that summary judgment would be inappropriate on either basis.  Whether the crew's training was so insufficient as to constitute a breach of duty and whether the placement of the alarm panel constitutes a hazardous condition are both reasonably disputed questions of fact.

## CONCLUSION

Accordingly, it is thereupon

**ORDERED AND ADJUDGED** that the Motions [DE 56 and DE 61] are **DENIED.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 2nd day of October, 2018.

JAMES I. COHN
United States District Judge

9

Copies provided to:
Counsel of record via CM/ECF